IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

SHELTER INSURANCE COMPANY and
RICKIE & CHANDRA CHADWICK,                                    PLAINTIFFS,

VS.                                              CIVIL ACTION NO. 2:03CV150-P-A

FORD MOTOR COMPANY,                                            DEFENDANT.

### MEMORANDUM OPINION

These matters come before the court upon Ford's Motion to Exclude the Testimony of Plaintiff's Expert Stephen Miller [75-1] and Motion for Summary Judgment [76-1]. Upon due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

This case involves a fire that occurred at the Chadwick's home in Nesbit, Mississippi near 2:00 a.m. on the night of June 12, 2002. In addition to much of the structure of the home, the fire destroyed three of the Chadwicks' vehicles: a 1993 Lincoln Town Car, a 1990 Chevrolet Corvette, and a 1998 Chevrolet Silverado. The Town Car and Corvette were parked wholly inside the garage. The Silverado was parked near the garage opening.

The plaintiffs argue that the fire originated under the hood of the 1993 Town Car – manufactured by the Ford Motor Company on December 10, 1992. They maintain that the speed control deactivation switch located under the hood on the driver's side and near the firewall malfunctioned by a resistive short which caused the fire even though the vehicle was not running. They cite a recall in which Ford recalled all Town Cars built at the Wixom assembly plant from November 4, 1991 to November 30, 1992 for a probable defect in the speed control deactivation

1

switch that could cause underhood fires though the vehicle was turned off. Even though the subject Town Car was built ten days after the recall period, the plaintiffs claim through their expert that this fact is not dispositive and that the cut-off date was chosen at random by Ford.

Based on these core assertions, the plaintiffs filed suit against Ford asserting causes of action for (1) product liability under the Mississippi Product Liability Act, Mississippi Code Annotated § 11-1-63; (2) res ipsa loquitur; (3) negligence; (4) breach of the implied warranty of merchantability; and (5) breach of the implied warranty of fitness for a particular purpose.

The plaintiffs designated James Vickers as a fire cause and origin expert who opines that the general area of origin of the fire was in or around the engine compartment of the Town Car. The plaintiffs designated Stephen Miller as an expert regarding the specific cause and origin of the fire and the alleged defective nature of the switch. Essentially, Miller opines that the fire started from the switch and that the switch is defective because (1) Ford recalled Town Cars with a similar problem, and (2) Ford and other manufacturers have designed different speed control switches that do not cause fires.

Ford denies that the fire originated near the Town Car and contends that the fire originated near the Corvette. In the instant motions, Ford moves to exclude the testimony of Stephen Miller and for summary judgment as to all of the plaintiffs' claims. Ford asserts that Miller is unqualified to render fire cause and origin opinions and his methods in determining the cause of the fire and the alleged defective nature of the switch were unreliable. Ford adds that if Miller's testimony is excluded, the plaintiffs cannot prove all of the elements to their causes of action given that they have no other expert that has opined that the switch in question specifically caused the fire or that the subject switch is defective.

## II. DISCUSSION

**A. Stephen Miller's Testimony**

**1. Rule 702 and Daubert/Kumho Standards**

> Fed. R. Evid. 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals., Inc..*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702.

Ultimately, the district court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert.*, 509 U.S. at 589. Under the familiar *Daubert/Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors

begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 of Rule 702 sets forth additional factors. For the purpose of clarity, the court will set forth all of the factors germane to considering whether to open the gate in the following manner:

**Fed. R. Civ. P. 26(a)(2)**

1. Did the expert turn in an expert report?

2. Did the expert report contain:

   (a) a complete statement of all opinions?
   (b) the basis and reasons therefor?
   (c) the data considered in forming the opinion?
   (d) any exhibits to be used as a summary of opinions?
   (e) the qualifications of the witness?
   (f) publications authored by witness in the last 10 years?
   (g) compensation
   (h) other cases in which the expert has testified in the last 4 years?

3. Were the expert disclosures made at least 90 days before trial? Or in the case of rebuttal evidence, within 30 days before trial?

4. Were the opinions supplemented pursuant to FRCP 26(e)(1) (with respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement] extends to both information contained in the report and to information provided through a deposition of the expert and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due – usually 30 days before trial)?

**Fed. R. Evid. 702**

5. Is the witness qualified by knowledge, skill, experience, training, or education?

6. Is the testimony based on sufficient facts?

7. Is the testimony the product of reliable methods?

8. Did the witness apply those methods to the facts reliably?

### *Daubert* factors in determining Rule 702 requirements

9. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?

10. Is the theory/technique subject to peer-review or publication?

11. Is there a known or potential rate of error of the theory/technique when applied?

12. Where standards and controls used?

### Advisory Committee Notes to 2000 Amendment of FRE 702 factors

13. Did the theory arise from litigation or independent research?

14. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

15. Did the expert adequately consider alternative explanations?

16. Was the expert "as careful as he would have been in his regular professional work outside his paid litigation consulting"? *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

17. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case.*"*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it

enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152. The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

**2. Analysis**

Having considered the expert report requirements of Fed. R. Civ. P. 26(a)(2) – no objections regarding same having been made – the court concludes that Stephen Miller satisfied Rule 26(a)(2).

The court will now consider the primary requirements of Rule 702. The first question is whether Miller is qualified by knowledge, skill, experience, training, or education to testify that the switch in question caused the fire and that the switch is defective. After exhaustive consideration of the briefs, the court concludes that Miller is not qualified to opine that the specific switch in question caused the fire. Miller has an impressive record as a college-educated senior automotive technician, inspector, and instructor. Since 1997 he has investigated approximately 190 vehicle fires for fire investigation services and eight major insurance companies. However, Miller admits several times in his deposition that he has no training or experience in fire science. Two examples include: "I really don't have any fire training or anything." (Dep. 109:12-13); and "I have no real knowledge and no experience in any type of fire science." (Dep. 141:7-8). The defendant is correct that just because Miller has investigated over 190 vehicle fires does not mean he is an expert in the actual cause of fires, but rather the potential causes of fires. In this case, an expert is needed to demonstrate that with a reasonable scientific certainty, the subject switch actually caused the subject fire. Miller does not possess the training or education in fire science necessary to do this. Experience alone in fire science is insufficient. If this testimony were allowed, it would be little more than the *ipse dixit* or say-so of

Miller. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The Court may conclude that there is simply too great of an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 118 S.Ct. 512, 519 (1997). The court so concludes. It is therefore unnecessary to consult the additional Rule 702 factors regarding Miller's specific fire cause and origin opinion.

The next question is whether Miller is qualified by knowledge, skill, experience, training, or education to opine that the subject switch was defectively designed. Having considered the arguments, the court concludes that Miller is qualified by knowledge, skill, experience, training *and* education to opine that the subject switch was defectively designed and there are feasible alternate designs. The defendant has cited no binding authority that only a automobile design or component design engineer can give reliable and relevant opinions regarding whether an automobile component was defectively designed. Indeed, Miller has likely had far more practical experience with malfunctioning vehicle components than the engineers who designed them.

This leaves the ultimate Rule 702 questions whether Miller's defective switch testimony is based on sufficient facts, whether the testimony is the product of reliable method, and whether Miller applied those methods to the facts reliably. However, the court need not address these questions because without Miller's specific fire cause and origin opinion – *i.e.*, that the subject switch caused the fire – the remaining Rule 702 factors are moot.

## B. Summary Judgment

### 1. Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit

them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*., at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**2. Analysis**

Ford argues that if the court excludes Miller's testimony that the subject switch actually caused the fire, summary judgment should be granted with respect to all of the plaintiffs' claims – *i.e.*, product liability under the MPLA, res ipsa loquitur, negligence, and breach of the implied warranties of merchantability and fitness for a particular purpose. The court agrees.

Under the Mississippi Product Liability Act, the plaintiff must prove *inter alia* that at the time the Town Car left Ford's control "the defective and unreasonably dangerous condition of the vehicle proximately caused the damages for which recovery is sought." Mississippi Code Annotated § 11-1-63(a)(iii). Because the court has ruled that Stephen Miller is not qualified to opine regarding fire cause and origin, and since the plaintiffs have offered no other expert to prove specific causation, the plaintiffs cannot meet the requirement of § 11-1-63(a)(iii). The plaintiffs' other experts, John Owen and James Vickers, can only opine that the air conditioning unit did not cause the fire and that the structure fire originated in the general area of the Town Car, respectively. Therefore, summary judgment should be granted with regard to the plaintiffs' MPLA claim. Similarly, a cause of action for negligence requires proof of causation and without Miller's specific causation testimony, the plaintiffs' claim for negligence fails as a matter of law.

The plaintiffs argue that even if their MPLA claim is dismissed, they still have a claim under the doctrine of res ipsa loquitur since that doctrine does not require an explanation of the mechanism

9

of failure in the subject vehicle. Res ipsa loquitur "is available to establish negligence on the part of the defendant only when the accident is such that, according to ordinary human experience, it could not have happened without such negligence." *Sports Page Inc. v. Punzo*, 900 So.2d 1193 (Miss.App. 2004). However, the defendant is correct that the plaintiff cannot meet the doctrine of res ipsa loquitur's requirement that "the defendant must have control and management of the instrumentality causing the plaintiff's injury." *Powell v. Methodist Healthcare-Jackson Hospitals*, 876 So.2d 347, 349 (Miss. 2004) (citing *Winters v. Wright*, 869 So.2d 357, 363 (Miss. 2003)). Therefore, the plaintiffs' res ipsa loquitur claim must fail as a matter of law.

Mississippi Code Annotated § 73-2-315 covers a claim for a breach of the implied warranty of fitness for a particular purpose. Comment 2 to § 73-2-415 states:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

The Mississippi Supreme Court in *Royal Lincoln-Mercury Sales, Inc. v. Wallace*, 415 So.2d 1024 (Miss. 1982) held that the implied warranty for fitness for a particular purpose does not apply to vehicles purchased for transportation. Specifically, the Court wrote:

> Although it can be envisioned that an automobile could be purchased for a particular purpose such as racing, towing a large trailer, or other specialized use, where the ordinary purchaser would need the seller's skill or judgment in making a selection, this was not so in the present case. We, therefore, think that § 75-2-515 has no application.

*Id*. at 1027. Therefore, this court concludes that the plaintiffs' claim for breach of warranty for fitness for a particular purpose should be dismissed since the subject Town Car was purchased

for the ordinary purpose of transportation.

Finally, the plaintiffs' claim for the breach of the implied warranty of merchantability must also fail as a matter of law because the plaintiffs purchased subject 1993 Town Car in 1993 from World Rent-A-Car with 18,000-19,000 miles on it and by the time of the June 12, 2002 fire, the vehicle had approximately 124,000 miles on it. *Ford v. Fairley*, 398 So.2d 216, 219 (Miss. 1981) ("As to the breach of any implied warranty of merchantability, the car had been driven over two years and 26,649 miles before Fairley experienced any difficulty with it. Such service as a matter of law negates a breach of an implied warranty of merchantability of this car.")

### III. CONCLUSION

For the reasons discussed above, the court concludes that Ford's Motion to Exclude the Testimony of Plaintiff's Expert Stephen Miller [75-1] and Motion for Summary Judgment [76-1] should be granted. Therefore, all of the plaintiffs' claims should be dismissed with prejudice. Accordingly, an Order shall issue forthwith,

**THIS DAY** of February 8, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE